1
2
3
4

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRA WILLIAMS,<br><br>                                 Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN, Acting<br>Commissioner of Social Security,<br><br>                                 Defendant. | Case No. 12-cv-0852 BTM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth herein, each motion is **GRANTED IN PART AND DENIED IN PART.**

## I. BACKGROUND

On December 6, 2007, Plaintiff Tyra Williams filed applications for Disability Insurance Benefits under Title II of the Social Security Act ("SSA"), and for Supplemental Security Income ("SSI") benefits under SSA Title XVI. (A.R. 209-217, Exs. 1D & 2D.) Plaintiff alleged disability as of September 26, 2006, when she was in a car accident. Her claim was denied on July 3, 2008, and was denied on reconsideration on November 25, 2008. (A.R. 97.) Plaintiff was present and represented by counsel at a brief hearing in May 2010, but the hearing was continued because the agency's record was incomplete. The Administrative Law Judge ("ALJ") ordered a consultative orthopedic examination in the interim. (A.R. 74.) Plaintiff and her counsel again appeared before an ALJ for a full hearing on

October 12, 2010.  A vocational expert also testified at the hearing.  On January 19, 2011, the ALJ issued a decision finding Plaintiff was not disabled as of the decision date. (A.R. 20, 32.)   Plaintiff filed a request for review, which the Appeals Council denied, making the ALJ decision a final decision of the Commissioner.  (A.R. 1-3.)

On April 6, 2012, Plaintiff filed a Complaint with the Court seeking judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  She also requested assistance in obtaining legal counsel.  Following a January 2013 hearing, the Court found that exceptional circumstances rendered Plaintiff eligible for such assistance pursuant to 28 U.S.C. § 1915(e)(1) and General Order 596.  Through the Court's Pro Bono Panel and the San Diego Volunteer Lawyer Program, Plaintiff obtained counsel effective May 1, 2013. (Doc. 21.)

## II.  THE ALJ'S FINDINGS AND CONCLUSIONS

The ALJ found as follows:

1. Plaintiff had disability insurance coverage through September 30, 2012, including September 26, 2006, the alleged onset date.

2. Plaintiff earned about $2,500 by providing in-home support services in 2007, but that did not amount to substantial gainful activity.

3. Plaintiff has the following severe impairments: strain/sprain of cervical spine, resulting in neck and shoulder pain; chronic strain, lumbar spine; slight hip joint narrowing, right hip; headaches; controlled hypertension; controlled asthma; controlled GERD; hemorrhoids; mild obesity; and major depressive disorder.

4. The record lacked credible evidence that Plaintiff's impairments meet the mental criteria set forth in Appx. 1, Sub. P, Reg. No. 4 including listing 12.04 (Adult Mental Disorders).  Plaintiff's impairment or combination of impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1.  Plaintiff had a mild restriction in activities of daily living, and moderate difficulties in social functioning, and moderate difficulties in concentration,

persistence, or pace. (A.R. 24-5).

5. Plaintiff has the residual capacity to perform sedentary work, lifting and carrying up to ten pounds, sitting for six hours of an eight-hour workday, and standing/walking for two hours per eight-hour workday, with (a) exertional limits: no pushing or pulling in the operation of machinery with either lower extremity; (b) non-exertional limits: no climbing ladders, scaffolds, or ropes; no working at unprotected heights; no balancing, kneeling, or crawling; no reaching or working overhead; no concentrated exposure to dangerous moving machinery, electric shock, radiation, or unprotected heights; no concentrated exposure to chemicals, dust, fumes, gases, or extreme heat, cold, or humidity; only occasional use of ramps or stairs; and only occasional stooping or crouching; and (c) mental limits: unskilled work with no close or frequent interpersonal contact with the public.

6. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform past relevant work as a home attendant (DOT No. 354.377-014, medium, unskilled at SVP-2).[1]

7. Plaintiff was 37 years old at the time of alleged onset and was 41 years old on the date of the decision, making her "a younger individual aged 18-44." (A.R. 31.) 20 C.F.R. §§ 404.4564, 416.963.

For these and other reasons, the ALJ found that Plaintiff could perform only a limited range of sedentary work, but concluded she was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date of September 26, 2006, through the date of the ALJ decision, January 19, 2011.

---

[1] There are five steps in the determination of whether a claimant is disabled. 20 C.F.R. § 404.1520; Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). At step four, the ALJ here determined that Plaintiff cannot do work she has performed in the past. However, he found that she was not disabled at step five because there was a significant number of jobs she could do in the national economy.

1   **III. <u>STANDARD OF REVIEW</u>**

2       The Commissioner's denial of benefits may be set aside if it is based on legal

3 error or is not supported by substantial evidence. <u>Jamerson v. Chater</u>, 112 F.3d

4 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less

5 than a preponderance. <u>Id.</u> Substantial evidence is "relevant evidence which,

6 considering the record as a whole, a reasonable person might accept as adequate to

7 support a conclusion." <u>Flaten v. Secretary of Health & Human Servs.</u>, 44 F.3d

8 1453, 1457 (9th Cir. 1995). If the evidence can reasonably support either

9 affirmance or reversal, a court may not substitute its judgment for that of the

10 Commissioner. <u>Tackett v.Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); <u>Maynes v.</u>

11 <u>Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001).

12       **IV. <u>DISCUSSION</u>**

13       Plaintiff argues that the ALJ's decision is erroneous because the ALJ (1) did

14 not give controlling weight to the opinions of Dr. Silbert, the treating physician; (2)

15 placed undue weight on the opinions of medical advisors and non-treating

16 physicians; and (3) failed to provide adequate justification for making adverse

17 credibility determinations as to the testimony of Plaintiff and her daughter. As

18 discussed below, the Court agrees in part and disagrees in part.

19 **A.    <u>Analysis of Physicians' Opinions</u>**

20       Plaintiff contends that the ALJ erred "by not according the medical opinions

21 of Plaintiff's treating physician, Dr. Silbert, 'controlling weight,' or, at the very

22 least, the 'greatest weight' of all opinions contained in the Administrative Record"

23 in violation of 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), and SSR 96-2.

24 According to Plaintiff, she would have satisfied the disability criteria if Dr. Silbert's

25 opinion was given controlling weight.

26       The ALJ gave Dr. Silbert's opinion(s) "little weight," describing the doctor's

27 functional assessments as "self-contradictory to the point of absurdity." (A.R. 30.)

28

4

1   The ALJ explained that "[n]othing In Dr. Silbert's treating records or anywhere else
2   in the record even begins to support [the] extreme functional limitations assessed by
3   Dr. Silbert, which grossly exceed the [limits] assessed by Dr. Sabourin, Dr.
4   Mazuryk, and Dr. Rigler." (Id.) The Court agrees to a point but also finds the
5   ALJ's explanation wanting. More specifically, the Court finds adequate support in
6   the record for limiting the weight accorded to Dr. Silbert's opinion through the end
7   of 2008, but the ALJ's stated reasons for discounting the opinion are not supported
8   by substantial evidence for the period thereafter.

9        1.    Deference to Treating Physicians

10      As a general matter, opinions of treating physicians are given controlling
11  weight when supported by medically acceptable diagnostic techniques and when not
12  inconsistent with other substantial evidence in the record. See 20 C.F.R. §
13  404.1527(d)(2); SSR 96-2p. Greater weight is typically afforded to a treating
14  physician's opinion because "he is employed to cure and has a greater opportunity to
15  know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226,
16  1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily
17  conclusive as to either a physical condition or the ultimate issue of disability."
18  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v.
19  Bowen, 876 F.2d 759 (9th Cir. 1989)).

20      To the extent the ALJ rejects a treating physician's opinion, he must do more
21  than proffer his own conclusions – he must state his own interpretations and explain
22  why they are superior. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).
23  The ALJ may satisfy this standard with a thorough discussion of the evidence, and
24  by explaining his interpretations and findings. Magallanes, 881 F.2d at 751. The
25  ALJ must present clear and convincing reasons for rejecting the uncontroverted
26  opinion of a treating physician. Id. Where a treating physician's opinion is
27  contradicted by another doctor, the ALJ may not reject it without providing
28

5

1   "specific and legitimate reasons" supported by substantial evidence in the record.

2   Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1990). Even if the treating

3   physician's opinion is inconsistent with other substantial evidence in the record, it is

4   afforded deference and weighed using the factors provided in 20 C.F.R. § 404.1527.

5   Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); SSR 96-2p. These

6   factors include, *inter alia*, the "nature and extent of the treatment relationship"

7   between the patient and the treating physician, the "length of the treatment

8   relationship and the frequency of examination," the amount of relevant evidence

9   that supports the opinion and the quality of the explanation provided, and the

10  consistency of the medical opinion with the record as a whole. 20 C.F.R. §

11  404.1527(d)(2)-(6). See also 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

12      2.      Dr. Silbert's Opinion

13          Dr. Silbert treated Plaintiff for her back pain, neck pain, and headaches

14  sixteen times during the four years preceding the ALJ hearing, beginning in

15  September 2006. (A.R. 338-355.) Dr. Silbert prescribed pain killers including

16  Hydrocodone (Vicodin), Ibuprofen, and Cyclobenzaprine (Flexeril) (a muscle

17  relaxant). In August 2007, she was also taking, *inter alia*, doxepin, imitrex (for

18  headaches), and nortriptyline (ostensibly for depression). (A.R. 352.)

19          On a Residual Functional Capacity questionnaire dated March 19, 2010, Dr.

20  Silbert described Plaintiff's diagnosis as "chronic myofascial pain syndrome,

21  lumbrosacral radiculitis, and migraine headache[s]." (A.R. 453-55.) He stated, *inter*

22  *alia*, that Plaintiff's neck and lower back pain affected her ability to engage in

23  various manipulative activities "when it flares." (A.R. 454.) He also indicated that

24  she could not squat, though she could occasionally bend, crawl, climb, or reach.

25  (A.R. 453.) Dr. Silbert opined that Plaintiff could lift up to 8-9 lbs. and was

26  "completely unable to be gainfully employed." (A.R. 455.) He did not provide an

27  estimated date upon which his assessment began to apply.

28

1      3.  <u>The ALJ's Legitimate Reasons for Discounting Dr. Silbert's Opinion</u>

2          a.  Conflicting Medical Opinions

3        The ALJ concluded that Dr. Silbert's assessment "grossly exceeded the

4  functional limitations assessed by Dr. Sabourin, Dr. Mazuryk, and Dr. Rigler."

5  (A.R. 30.)  The Court thus considers their opinions in turn.

6        The SSA's consulting orthopedist, Thomas Sabourin, M.D., performed a

7  complete physical orthopedic examination in June 2010.  The ALJ gave the greatest

8  weight to Dr. Sabourin's clinical findings, noting that "his report of physical

9  examination is more thorough and detailed than any other of record."  (A.R. 29.)

10  Dr. Sabourin noted that Plaintiff had normal gait and posture, sat comfortably

11  during the examination, rises from a chair without difficulty, and has no need for

12  assistive devices.  (A.R. 1505, 1508.)  Dr. Sabourin's impression was:  (1) chronic

13  cervical strain and sprain, and (2) chronic lumbar strain and sprain.  Dr. Sabourin

14  opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds

15  frequently, and stand, sit, or walk for up to six hours of an eight-hour workday.  He

16  further noted that she "appears to be relatively active based on very significantly

17  calloused feet."  (A.R. 1508.)  Dr. Sabourin's report also states that "there are no

18  outside reports to review and there are no x-rays to review."  (<u>Id.</u>)  It does not

19  discuss Plaintiff's headache complaints or the side effects of medications, nor does

20  it state whether Plaintiff was medicated at the time of the examination.

21        Mary-Ellen Mazuryk, M.D., a state medical consultant, did not examine

22  Plaintiff, but filled out a physical residual functional capacity assessment on

23  November 25, 2008.  (A.R. 440-444.)  Dr. Mazuryk opined that Plaintiff could lift

24  and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours

25  and sit about 6 hours in an 8-hour work day; occasionally climb ramps and stairs;

26  and occasionally balance, stoop, kneel, crouch, and crawl.  Dr. Mazuryk limited

27  Plaintiff to occasional overhead work due to neck stiffness and pain.  (A.R. 442.)

28

1 | The ALJ gave significant weight to Dr. Mazuryk's opinion regarding Plaintiff's
2 | physical capacities. The ALJ explained that her opinion was "well-supported by
3 | [the] orthopedic consultive examiner and the record as a whole." (A.R. 29.)

4 | Although chiropractors are not acceptable medical sources, the ALJ gave
5 | moderate weight to the opinions of Plaintiff's chiropractor, Dr. Rigler "which are
6 | consistent with those of [Dr. Sabourin and Dr. Mazuryk]." (A.R. 30.) Dr. Rigler
7 | treated Plaintiff in March 2008. He observed that she had a reduced range of
8 | motion in her neck and lower back, and opined that she was capable of light to
9 | moderate lifting, carrying, standing, walking, and sitting. (A.R. 369). It bears
10 | noting, however, that Dr. Rigler last saw Plaintiff over two years before her hearing.

11 | The ALJ gave moderate weight to each of three psychiatric consultant's
12 | opinions. (A.R. 29.) Neither Dr. Paxton, M.S. nor Dr. Loomis, D.O. actually
13 | examined Plaintiff, and the ALJ provided no specific discussion of their analyses.
14 | Gregory Nicholson, M.D. performed a comprehensive psychiatric evaluation on
15 | Plaintiff on June 23, 2008. As Plaintiff had not previously seen a psychiatrist (A.R.
16 | 56), Dr. Nicholson had no psychiatric records to review. (A.R. 383.) Dr. Nicholson
17 | concluded that Plaintiff was moderately limited in her ability to interact with co-
18 | workers and the public and to associate with day-to-day work activity, including
19 | attendance and safety. (A.R. 388.) His diagnostic impression included (1)
20 | Generalized Anxiety Disorder, and (2) Major Depressive Disorder. (A.R. 387.) Dr.
21 | Nicholson opined that Plaintiff's condition would improve over the following year
22 | with active treatment. While there is no finding of a severe medically determinable
23 | mental impairment, the ALJ accordingly limited Plaintiff to unskilled work with no
24 | close or frequent interpersonal contact with the public. (See A.R. 56-59.)

25 | "The opinions of non-treating or non-examining physicians may also serve as
26 | substantial evidence when the opinions are consistent with independent clinical
27 | findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957

28

8

12-cv-0852-BTM

1  (9th Cir. 2002); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041-42 (9th Cir. 2008)

2  ("[The ALJ] is the final arbiter with respect to resolving ambiguities in the

3  evidence."). The Court finds that the ALJ did not err in discounting the treating

4  physician's assessment as unsupported by the record, at least through 2008. <u>See</u>

5  <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001). Nor does the Court find

6  error in the ALJ's weighing of the opinions of Dr. Sauborin or Dr. Nicholson.

7  However, the ALJ did err by not providing detailed reasons for the weight

8  assigned to Drs. Marzuryk, Paxton, or Loomis. The ALJ is required to explain the

9  weight assigned to *all* opinions. 20 C.F.R. 416.927(e)(2)(ii).

10  b. Inconsistency With Medical Records

11  The ALJ pointed out that Dr. Silbert's own records indicated that Plaintiff's

12  lumbar radiculitis subsided in late 2008. (A.R. 30-31.) In September 2008, Dr.

13  Silbert indicated that Plaintiff "has fairly stable control of the chronic right-sided

14  neck pain with regular use of Tylenol #3 and tizanidine. . . . the right sciatica has

15  completely resolved but she still has some low back pain. . . . In general the low

16  back pain is made worse with prolonged standing or sitting also bending or twisting.

17  Overall though it is much better than it was . . . ." (A.R. 572.) Additionally, a

18  September 2008 MRI showed only minimal abnormalities. (A.R. 430.) Moreover,

19  chiropractic treatment (A.R. 351, 369) and physical therapy (A.R. 591, 597, 607,

20  623, 727) helped alleviate Plaintiff's neck pain. Her back pain also improved with

21  physical therapy (A.R. 727, 1754) and medication (A.R. 524, 746). Thus, the ALJ

22  decision appears to be well-supported at least through some point in 2009.

23  In March 2010, however, Dr. Silbert's notes state that Plaintiff's lumbosacral

24  radiculitis was "persistent, being evaluated thru Physical Medicine." (A.R. 1314-

25  15.) And the record indicates that she sought treatment in 2009 and 2010 for

26  persistent migraines and back pain. (A.R. 656-661, 991-1004, 1215-6, 1283-9.)

27  The ALJ decision addresses neither these examinations nor Plaintiff's post-2008

28  

9

12-cv-0852-BTM

visits to Dr. Silbert for trigger point injection treatment of neck pain, headaches, and upper-right extremity pain. (A.R. 613-616, 673-77.) In fact, the record contains a self-reported reference to a September 2009 car accident (A.R. 1284), though Plaintiff did not mention it at the hearing (A.R. 58-9). Records of medical treatment that post-date the ALJ hearing also indicate that Plaintiff continued to suffer from back pain, neck pain, and migraines throughout 2010 and 2011. (A.R. 1765-1791.) With respect to mobility and orthopedic considerations, this seems inconsistent with Dr. Saboruin's report. It bears noting, however, that Dr. Sabourin conducted an orthopedic examination and did not evaluate Plaintiff's claims of neck pain, headaches or grogginess. Considering all the record evidence, including Dr. Silbert's records, the Court finds the ALJ decision to be supported by substantial evidence through the end of 2008, but not thereafter.

      4.   The ALJ's Other Reasons for Discounting Dr. Silbert's Opinion

      Dr. Silbert answered three pages of short questions about Plaintiff's physical capacities on March 19, 2010, signing and dating each page. The first page defines "occasionally" as 1% to 33% of an 8-hour workday, but the second page defines it as "17%-33% of working" (presumably 80-160 minutes). (A.R. 454-54.) In either case, the ALJ incorrectly stated that the term "occasionally," as used by Dr. Silbert, means up to "three hours per eight-hour day." (A.R. 30.) The ALJ chastised Dr. Silbert's opinion for inconsistences that could be based on a misunderstanding of what "occasionally" means. (A.R. 29-30.)   Moreover, the ALJ stated that Plaintiff's complaints about headaches had become infrequent, and incorrectly notes that "Dr. Silbert never prescribed significant medication for headaches." (A.R. 31.) Actually, Plaintiff was prescribed Imitrex specifically for migraines. (A.R. 352.) She was also on a regimen of Vicodin and Tylenol #3. (A.R. 1412, 1432, 1504.) In 2011, she was also prescribed pregabalin for neuropathic pain. (A.R. 1765, 1783.) Moreover, she repeatedly complained of and sought treatment for headaches in

2009 and 2010.  (A.R. 656-661, 991-1004, 1215-6, 1283-9.)

Finally, the ALJ found that Plaintiff's "analgesic medication history is inconsistent with her claimed severity of pain.  She has never been maintained on a regular prescription of strong analgesics such as morphine, methadone, or Fentanyl."[2]  (A.R. 28.)  The ALJ may have erred in assuming this inconsistency, as the record indicates that Plaintiff has a morphine allergy.  (See, e.g., A.R. 415, 1412, 1504).  Regardless of the morphine allergy, the record shows repeated visits in 2009 and 2010 for pain management, including toradol shots.  Additionally, as discussed below, the ALJ reached this conclusion without discussing side effects.

These conclusions are unsupported by the record and are thus not reasons to discount Dr. Silbert's opinion.  Because the ALJ's weighing of Dr. Silbert's opinion was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  See Genier v. Astrue, 606 F.3d 46, 50-51 (2d Cir. 2010) (applying same rule to credibility determination).

**B.   Plaintiff's Symptom and Pain Testimony**

   1.   Legal Standard

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  In the first stage, the claimant must (1) produce objective medical evidence of an impairment or impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of the symptoms described.  Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  "Once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective

---

[2] Although the ALJ's observation about analgesic medication was made with respect to Plaintiff's credibility and not Dr. Silbert's opinion, it is relevant to both.

12-cv-0852-BTM

1 complaints based solely on a lack of objective medical evidence to fully corroborate
2 the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir.
3 1991). This is so even if the claimant testifies that he experiences pain or a
4 symptom to a greater degree than would normally be expected as a result of the
5 medical impairment. <u>Cotton</u>, 799 F.2d at 1407; <u>Swenson v. Sullivan</u>, 876 F.2d 683,
6 687-88 (9th Cir. 1989).

7      If the claimant satisfies the <u>Cotton</u> test and there is no evidence of
8 malingering, the ALJ can reject the claimant's testimony about the severity of his
9 symptoms only by offering specific, clear and convincing reasons for doing so.
10 <u>Smolen</u>, 80 F.3d at 1281. The ALJ must state specifically which symptom
11 testimony is not credible and what facts in the record support that conclusion.
12 <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Rashad v. Sullivan</u>, 903 F.2d
13 1229, 1231 (9th Cir. 1990) (to reject subjective complaints, the ALJ "must provide
14 'specific, cogent reasons for the disbelief").

15      2.    <u>Analysis</u>
16      The ALJ found that Plaintiff's statements concerning the intensity and
17 limiting effects of her symptoms were not fully credible based on her (a) demeanor
18 and lack of candor about her criminal record, (b) poor work history, (c) failure to
19 follow prescribed treatment, and (d) inconsistent statements. (A.R. 27-8.)

20      a. Work History
21      The ALJ decision states that "[Plaintiff ] was virtually unemployed for six
22 years, and made over $10,000 per year in only six years in her entire life. Her
23 failure to work for years when she could have done so reflects poorly on her
24 motivation for gainful employment." (A.R. 27.) The exhibit cited by the ALJ
25 actually shows that Plaintiff worked for a least part of each year for about thirteen
26 years preceding the 2006 car accident, with her income peaking at $20,589 in 2003.
27 (A.R. 236.) Additionally, at the 2006 minimum wage of $5.15 per hour, $10,000
28

represents 48.5 weeks of full-time work.  Moreover, Plaintiff's work history could just as easily be a reflection of poor mental health or of her "limited, eleventh-grade education" (A.R. 32).  Defendant provides no authority supporting this analysis of work history.  Accordingly, the Court finds that the ALJ's suppositions based upon Plaintiff's work history are invalid bases for rejecting her pain testimony.

### b.  Demeanor & Lack of Candor

Although the ALJ did not make an express finding of malingering, he found, without elaborating, that Plaintiff's demeanor at the hearing was poor.  Plaintiff first testified at the hearing that she had only one criminal conviction, for fighting.  (A.R. 49.)  As the ALJ points out, she later admitted that she had two DUI convictions.  (A.R. 50-51.)  Plaintiff contends that she forgot at the time and was not trying to be misleading, emphasizing that she had disclosed the convictions in her initial application.  The Court typically defers to the ALJ with respect to the assessment of demeanor and the interpretation of inconsistent testimony.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the ALJ must provide "specific, cogent reasons for the disbelief."  Rashad, 903 F.2d at 1231.  The Court finds no substantial evidence to support the ALJ's conclusory credibility assessment, and therefore finds it insufficient to support a broad rejection of Plaintiff's testimony.  See Genier, 606 F.3d at 49 ("Because the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider 'all the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and cannot stand.").

### c.  Missed Appointments & Conservative Treatment

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007).  The treatment of Plaintiff's back and neck impairment was relatively conservative, consisting of pain killers and physical therapy.  It does not

1   appear that surgery was recommended.  Plaintiff missed several physical therapy

2   appointments.  (A.R. 555, 556, 601, 618, 621.)  Chaudhry v. Astrue, 688 F.3d 661,

3   672 (9th Cir. 2012) (a claimant's "unexplained or inadequately explained failure to

4   seek treatment or to follow a prescribed course of treatment" may support an

5   adverse credibility finding).  As there is no clear explanation for this, the Court

6   finds the missed physical therapy appointments and conservative treatment support

7   the ALJ's credibility assessment as to the alleged severity of Plaintiff's pain.

8       The ALJ also explained that "[d]espite her claims of debilitating depression,

9   the claimant has failed to seek treatment.  In fact, she testified that she has never had

10  any treatment from a mental health specialist such as a psychologist or psychiatrist,

11  and was not taking any psychotropic medication at all."  (A.R. 28.)  There is no

12  obvious explanation for Plaintiff's failure to seek psychological treatment, though it

13  can hardly be said that her medical visits were infrequent.  Since the ALJ decision

14  does not consider possible explanations for Plaintiff's failure to seek mental health

15  treatment, that failure is an improper basis for the ALJ's credibility determination.

16  See SSR 96-7p ("The adjudicator must not draw any inferences about an

17  individual's symptoms and their functional effects from a failure to seek or pursue

18  regular medical treatment without first considering any explanations that the

19  individual may provide, or other information in the case record, that may explain

20  infrequent or irregular medical visits or failure to seek medical treatment.")

21              d.  Inconsistency With Daily Activities

22       The ALJ's discussion of Plaintiff's daily activities misconstrues some of

23  Plaintiff's statements and ignores the statements of Plaintiff's daughter.  The ALJ

24  found that Plaintiff's "allegations of debilitation are inconsistent with her admitted

25  activities of daily life. . . . [Plaintiff] is the single mother of two teenagers, and she

26  does all of the things that mothers typically do for their children, including driving,

27  shopping, cooking, cleaning, and doing laundry."  (A.R. 28.)  See Burch, 400 F.3d

28

1   at 680-81(ability to carry out ordinary daily activities may belie claim of disabling

2   pain). On Plaintiff's self-report, she indicated that she drives, but not alone when

3   medicated due to effects. (A.R. 271-74.) She makes the bed, but does not vacuum.

4   She "cooks" three times per week and can wipe countertops clean, but she does not

5   do dishes. (A.R. 271-3) (stating that she cooks only "with supervision," and she

6   only cooks things that "don't take long [be]cause I'll fall to sleep."); (A.R. 280-82)

7   (daughter's statement that her mother "just re-heats what I already cooked . . . ."). In

8   fact, the record indicates that she became less active in 2010 and that she spends

9   most days sleeping, reading, or watching TV—activities that may be consistent with

10  disabling pain.

11          The ALJ also emphasized that Plaintiff "admitted in her testimony that she

12  drove for 90 minutes at a time in doing her share of driving eight hours per day

13  when she and her family drove cross-country and back again in October 2009."

14  (A.R. 31.) This mischaracterizes her testimony.  Plaintiff testified that she and three

15  others drove to Indiana in a van for her grandfather's funeral, stopping about every

16  six hours, and she drove sixty to ninety minutes at a time about four to six hours

17  each day. (A.R. 60-62.) She did not testify as to the physical impacts of the trip or

18  whether she was able to lay down in the van.  But the record indicates that she

19  received a shot of toradol for low back pain prior to the trip and that she sought

20  treatment for worsened neck pain upon returning. (A.R. 1216.)

21                            e.  Side Effects of Medication

22          An ALJ must consider all factors that might have a significant impact on an

23  individual's ability to work, including side effects of medications.  Erickson v.

24  Shalala, 9 F.3d 813, 817 (9th Cir. 1993).  If an ALJ disregards a claimant's

25  testimony as to the subjective limitations of side effects, he must "support that

26  decsion with specific findings similar to those required for excess pain testimony, as

27  long as the side effects are in fact associated with the claimant's medication(s)."

28

15

1   Varney v. Secretary of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1987).

2   If an ALJ fails to make such specific findings, the reviewing court should remand

3   the case so that the ALJ may either accept the evidence regarding side effects or

4   make specific findings rejecting such evidence. Id. at 586.

5        Plaintiff began taking narcotic pain medication and a muscle relaxant in 2006.

6   (A.R. 361.)  The ALJ gave little weight to Dr. Silbert's April 2009 opinion that

7   Plaintiff was unable to work "due to subjective complaints of grogginess resulting

8   from Tylenol #3 and Tizandine (Zanaflex)." (A.R. 30.)  The ALJ did not otherwise

9   address Plaintiff's claims of psychological impairments (e.g., grogginess, anxiety, or

10   memory problems), possible side effects of prescribed medication.[3]  (See, e.g., A.R.

11   418-19.)  See generally Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (requiring

12   consideration of side effects of pain medication); SSR 88-13.  This omission

13   warrants remand because the credibility evaluation should take into account adverse

14   side effects of pain medications.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th

15   Cir. 1991) (listing "adverse side-effects" as a "facto[r] an adjudicator must consider

16   to determine the credibility of the claimant's allegations of disabling pain."); Lester

17   v. Chater, 81 F.3d 821, 829-830 (9th Cir. 1995) ("Pain merges into and becomes a

18   part of the mental and psychological responses that produce the functional

19   impairments.").

20       3.    Conclusion

21        The Court finds that Plaintiff satisfied the first stage of the Cotton test.  The

22   Court further finds, based on a totality of the evidence, that ALJ's credibility

23   assessment was deficient because, though it was based in part on conservative

24

25

26      [3] Plaintiff's counsel did not take the time to clarify Plaintiff's medications, dosages, or side effects. Nonetheless, "[i]n Social Security cases the ALJ has a special

27   duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel." Brown

28   v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (citation omitted); see also Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).

treatment and missed appointments, the ALJ mischaracterized the record and failed to consider the side effects of medications. See generally Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162-63 (9th Cir. 2008). Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. The hence Court credits Plaintiff's testimony as a matter of law. See Lester, 81 F.3d at 834. On remand, the ALJ should more fully describe the factors enumerated in SSR 96-7p and 20 C.F.R. §§ 404.1529(c), 416.929(c), and consider whether Plaintiff suffered weakness, fatigue, or cognitive infirmity resulting from medication.

## C.     **The Third-Party Report**

### 1.     Legal Standard

The agency is required to consider all evidence in the record, including statements from friends and family. 20 C.F.R. §404.953(a). The ALJ must also consider evidence from acceptable non-medical sources regarding a claimant's ability to work. 20 C.F.R. §404.1513(d)(4). Sprague, 812 F.2d at 1232 ("Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence."). While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing "reasons that are germane to each witness." Dodrill, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. . . . this is particularly true of witnesses who view the claimant on a daily basis."); Greger v. Barnhart, 464 F.3d 968, 972-973 (9th Cir. 2006). See also Regennitter v. Comm'r of Soc. Sec., 166 F.3d 1294, 1298 (9th Cir. 1999) (lay witnesses are of "particular value" because they can testify to a claimant's everyday activities).

### 2.     Analysis of ALJ Decision

The ALJ gave little weight to the third party function report completed by

17

Plaintiff's daughter, Shyra Robinson, "for the same reasons I gave little weight to the claimant's allegations. They are simply unsupported by the medical evidence of record. Moreover, the claimant's daughter has a familial bias and is not a medical professional." (A.R. 31.) Although lay witness testimony may be rejected if the ALJ finds the witness to be biased, familial bias alone is not a sufficient reason to reject a third-party functional report. See Greger, 464 F.3d at 972 (finding the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness); Smolen, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); see also Valentine v. Comm'r Soc. Sec., 574 F.3d 685, 694 (9th Cir. 2009) (being an interested party in the abstract was insufficient to reject a spouse's testimony); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."). This conclusory statement is legally insufficient because it provides no reason specific to Ms. Robinson's testimony. The ALJ also erred to the extent he disregarded Ms. Robinson's written statement because she is not medically trained. See 20 C.F.R 404.1513(e)(2).

The Court accordingly finds that the ALJ provided no sufficient, germane reason for discounting Ms. Robinson's statement. Consequently, the Court remands with instructions to reconsider her testimony or state more specifically a reason for not doing so. See Robbins v. Comm'r of Soc. Sec., 466 F.3d 880, 885 (9th Cir. 2006) (remanding to agency where ALJ failed to account for testimony of claimant's son as to functional limitations and severity of pain); Plaza v. Astrue, 2013 U.S. Dist. LEXIS 8029, *21-23 (C.D. Cal. Jan. 18, 2013); Barrera v. Astrue, 2012 U.S. Dist. LEXIS 136875, *48-53 (D. Ariz. Sept. 25, 2012) (finding the ALJ's reasons insufficient to reject testimony of claimant's daughter and remanding).

12-cv-0852-BTM

### V. CONCLUSION

The Court finds that the ALJ decision is supported by substantial evidence in the record through 2008, but not thereafter.  Specifically, the Court finds that the ALJ (1) erred in failing to sufficiently identify reasons for discounting Dr. Silbert's opinion after 2008; (2) discounted the third-party residual functional capacity report for invalid reasons; and (3) misconstrued the record.  See Regennitter, 166 F.3d at 1297. Additionally, (4) the ALJ's assessment of Plaintiff's credibility lacks a sufficient discussion of side effects of Plaintiff's medications.

For these reasons, the Court vacates the ALJ decision and remands for reconsideration pursuant to 42 U.S.C. § 405(g).  See Lewis v. Astrue, 498 F.3d 909, 910 (9th Cir. 2007); Su Hwa She v. Holder, 629 F.3d 958, 963-964 (9th Cir. 2010) ("Rather than countenance a decision that leaves us to speculate based on an incomplete analysis, we remand the case . . . for clarification.")  On remand, the ALJ is instructed to make specific findings regarding the side effects of Plaintiff's medications, reevaluate Dr. Silbert's opinions and the third-party report, credit Plaintiff's testimony, and reconsider whether Plaintiff may have suffered the onset of a disability in 2009 or later.  In his discretion, the ALJ may permit supplementation of the record, e.g., with respect to Plaintiff's mental health or lethargy.

For the reasons discussed above, the parties' cross-motions for summary judgment are each **GRANTED IN PART AND DENIED IN PART**.  It is accordingly **ORDERED** that this action be **REMANDED** to the Commissioner of the Social Security Administration for reconsideration consistent with this order.

The Clerk of Court shall enter judgment accordingly.

DATED: January 29, 2014

Barry Ted Moskowitz
Chief United States District Judge